IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 24-cv-02531-PAB-CYC

PATRICK POGUE,

Plaintiff,

v.

ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, and
CHUBB CUSTOM INSURANCE COMPANY,

Defendants.

---

# ORDER

---

This matter comes before the Court on Defendant Allstate's Motion for Summary Judgment [Docket No. 54] and Defendant Chubb's Motion for Summary Judgment in Part [Docket No. 58]. Plaintiff filed responses, Docket Nos. 72, 73, and defendants filed replies. Docket Nos. 82, 84.

## I. UNDISPUTED FACTS[1]

On September 26, 2019, plaintiff Patrick Pogue was involved in an automobile accident in Douglas County, Colorado. Docket No. 58 at 2, ¶ 1. At the time of the accident, Mr. Pogue maintained an insurance policy with defendant Allstate Fire and Casualty Insurance Company ("Allstate"), which included underinsured motorist ("UIM") coverage. Docket No. 54 at 2, ¶ 2. Mr. Pogue was also a named insured holding UIM coverage on a group personal excess liability insurance policy with defendant Chubb Custom Insurance Company ("Chubb"), which was excess to his UIM coverage with

[1] The following facts are undisputed unless otherwise noted.

Allstate. Docket No. 58 at 2, ¶ 2. Mr. Pogue is a partner at the financial services firm Edward Jones, where he receives commissions, bonuses, and partnership distributions. *Id.* at 4, ¶ 8. Mr. Pogue does not have a set work schedule and completes work obligations in his personal time. *Id.* at 3, ¶ 7.

On April 5, 2022, Mr. Pogue, through counsel, requested that Allstate open a UIM claim related to the accident.[2] Docket No. 54 at 3, ¶ 3. Allstate assigned Byung Son to handle Mr. Pogue's UIM claim. *Id.*, ¶ 4. On May 6, 2022, Mr. Son wrote to Mr. Pogue to advise that he had not received any records. *Id.*, ¶ 5. On June 14, 2022, Mr. Pogue sent Allstate medical records and bills purportedly related to the automobile accident. *Id.*, ¶ 6. Upon reviewing this information, Mr. Son noted a sudden increase in injury severity, a slip-and-fall that occurred in March 2022, and the absence of neck pain in physical therapy records despite neck pain being identified as a primary concern.[3]

---

[2] Mr. Pogue purports to deny this fact in part, but admits that his counsel sent Allstate a letter on April 5, 2022 asking to open a UIM claim. Docket No. 72 at 4, ¶ 3. Mr. Pogue's supposed "denial" is in reality an attempt to proffer a different, unrelated fact regarding an earlier February 16, 2021 letter of representation. *See id.* As noted in the Court's Practice Standards, Mr. Pogue cannot proffer facts in his response to Allstate's statement of undisputed facts; instead, Mr. Pogue must proffer additional facts in a separate section of his brief titled "Statement of Additional Disputed Facts" or "Statement of Additional Undisputed Facts." Practice Standards (Civil Cases), Judge Philip A. Brimmer, § III.F.3.b.v. Therefore, the Court deems this fact admitted and will deem admitted any other facts which Mr. Pogue purports to "deny in part" without actually denying the asserted fact.

[3] Mr. Pogue purports to deny this fact, but does not cite any evidence in support of his denial. Docket No. 72 at 5, ¶ 7. Per the Court's Practice Standards, "[a]ny denial shall be accompanied by . . . a **specific reference** to material in the record supporting the denial." Practice Standards (Civil Cases), Judge Philip A. Brimmer, § III.F.3.b.iv. Instead of providing a reference to material in the record supporting the denial, Mr. Pogue asserts that he "has not been allowed the opportunity to take Allstate's deposition or Mr. Son's deposition." Docket No. 72 at 5, ¶ 7. Mr. Pogue does not explain how he has been deprived of the opportunity to conduct these depositions, cite any evidence supporting this assertion, or describe what information he suspects would come to light at such depositions that would contradict Allstate's assertion of fact. Due

*Id.*, ¶ 7. In response to these observations, Mr. Son requested that Mr. Pogue appear for an independent medical examination ("IME") to assess his medical issues.[4] *Id.*, ¶ 8. The IME was scheduled for August 11, 2022 with Dr. Steven Gulevich, a board-certified neurologist. *Id.*, ¶ 9. Mr. Son provided a copy of the IME report to Mr. Pogue and informed Mr. Pogue's counsel that he would be out of the office but would respond to Mr. Pogue's UIM claim by September 9, 2022.[5] *Id.*, ¶ 10.

In Mr. Son's September 6, 2022 evaluation of the UIM claim, Mr. Son noted that the IME report concluded that a significant amount of Mr. Pogue's treatment was unrelated to the automobile accident. *Id.*, ¶ 11. Mr. Son's evaluation included $66,301.82 for medical expenses related to the automobile accident, general, noneconomic damages of $33,000-$45,000, and $289.85 for mileage incurred traveling to and from medical appointments. *Id.* at 4, ¶ 12. On September 7, 2022, Mr. Son conveyed the evaluation to Mr. Pogue and offered $4,720.67 after factoring in the $100,000 plaintiff received from the tortfeasor. *Id.*, ¶ 13. Mr. Pogue responded that

---

to Mr. Pogue's failure to support his denial with a specific reference to material in the record, the Court deems this fact admitted. Mr. Pogue denies other facts on the same basis, *id.* at 5, ¶¶ 11-12, which the Court deems admitted for the same reason stated here.

[4] Mr. Pogue purports to deny this fact but cites no evidence in support of his denial. Docket No. 72 at 5, ¶ 8. Instead, plaintiff quotes an email from Mr. Son (without providing a citation to the email) that indicates Mr. Son was attempting to schedule an IME. It is not clear how this quote, even if properly cited, serves to deny the fact that Mr. Son requested that Mr. Pogue appear for an IME. Thus, the Court deems this fact admitted.

[5] The parties dispute the date that Mr. Son provided Mr. Pogue with the IME report, with Allstate claiming the report was sent on August 18, 2022 and Mr. Son claiming the report was sent on August 31, 2022. Docket No. 54 at 3, ¶ 10; Docket No. 72 at 5, ¶ 10. However, Mr. Pogue does not dispute that he was sent a copy of the IME report and that he was told his claim would be responded to by September 9, 2022. *See* Docket No. 72 at 5, ¶ 10.

same day, asking a series of questions about the evaluation and asking why Mr. Son did not include $84,344.91 for time spent traveling to appointments. *Id.*, ¶ 15. On September 20, 2022, Mr. Son sent Mr. Pogue a letter providing additional explanation regarding the evaluation and explaining that documentation regarding lost earnings has been requested but not yet received.[6] *Id.*, ¶ 16. On November 2, 2022, Mr. Pogue sent Mr. Son a letter attempting to explain how Mr. Pogue's per-hour rate was calculated based on annual partnership distributions from Mr. Pogue's employment with Edward Jones, but denied Mr. Son's request for documentation related to Mr. Pogue's annual compensation. *Id.*, ¶ 17. On November 10, 2022, Mr. Son sent Mr. Pogue a letter explaining why he needed the documentation he requested to calculate the loss of time damages and requested Mr. Pogue's cooperation, advising that the documentation should be produced within 60 days. *Id.*, ¶ 18.

On January 10, 2023, Mr. Pogue sent a letter rejecting Mr. Son's request for additional information, stating that Mr. Son had all the information necessary to calculate lost time damages, and accusing Mr. Son of intentionally undervaluing his claim. *Id.* at 5, ¶ 19. On January 23, 2023, Mr. Son responded and reiterated that, while partnership distributions may be an appropriate measure to base a claim for lost earnings, Mr. Son needs to review documentation regarding such distributions. *Id.*,

[6] Mr. Pogue denies this fact by quoting other parts of the September 20, 2022 letter. Docket No. 72 at 6, ¶ 16. Mr. Pogue's quotation does not refute the fact that the September 20, 2022 letter provided additional explanation about the evaluation and explained that documentation regarding lost earnings was requested but not received. *See id.* Therefore, the Court deems this fact admitted. Mr. Pogue similarly denies other of Allstate's facts through quoting language of the letters Allstate provides in support of its facts. *Id.* at 6-7, ¶¶ 17-19, 21. While the quoted language provides additional context, none of it serves to refute Allstate's assertions of fact. *See id.* Therefore, the Court deems those facts admitted.

¶ 20. In the January 23, 2023 correspondence, Mr. Son also requested a chance to meet with Mr. Pogue, reiterated his previous requests for information, and provided an additional 60 days for Mr. Pogue to cooperate with the requests for information.[7] *Id.*, ¶ 21. Mr. Son did not receive a response to his January 23, 2023 correspondence.[8] *Id.*, ¶ 22. On June 7, 2023, Mr. Son sent another letter detailing his requests for information, explaining how the failure to cooperate with the requests had prejudiced his ability to evaluate portions of the claim, and identifying pertinent language in the policy. *Id.*, ¶ 23.

On November 28, 2023, Mr. Pogue provided additional medical records purportedly related to the automobile accident. *Id.*, ¶ 24. On December 11, 2023, Mr. Son advised Mr. Pogue that he would be requesting that Dr. Gulevich review the additional records. *Id.* at 6, ¶ 25. Dr. Gulevich prepared an addendum dated December 15, 2023 which found that the injuries in the additional medical records were unrelated to the automobile accident. *Id.*, ¶ 26. Mr. Son forwarded this addendum to Mr. Pogue on December 18, 2023 and followed up on a previous request for medical records. *Id.*, ¶ 27. On January 9, 2024, Mr. Son sent a follow-up letter reiterating his request for additional information. *Id.*, ¶ 28.

---

[7] In denying this fact, Mr. Pogue asserts that Allstate was offered the opportunity to speak with Mr. Pogue. Docket No. 72 at 7, ¶ 21. Mr. Pogue provides no citation to support this fact. *Id.* Moreover, even if true, the fact that Allstate was offered the opportunity to speak with Mr. Pogue does not serve to refute the fact that the January 23, 2023 correspondence included a request to speak with Mr. Pogue. Thus, the Court deems this fact admitted.

[8] Mr. Pogue denies this fact, but cites no evidence supporting the denial. Docket No. 72 at 7, ¶ 22. Thus, the Court deems this fact admitted.

On January 23, 2024, Allstate received a supplemental demand package from Mr. Pogue. *Id.*, ¶ 29. Upon review of the supplemental demand package, Mr. Son asked Mr. Pogue whether he was claiming that surgeries on his right shoulder and toe were related to the automobile accident. *Id.*, ¶ 30. Mr. Pogue advised that he was claiming the shoulder surgery was related to the automobile accident. *Id.*, ¶ 31. On February 12, 2024, Mr. Son sent an email to Mr. Pogue stating that he was unable to find any indication in the medical records that the right shoulder was injured in the automobile accident, but did find reference to chronic complaints in his right shoulder dating back over 20 years. *Id.*, ¶ 32. Mr. Son asked Mr. Pogue to identify the records that supported the assertion that the right shoulder surgery was related to the automobile accident. *Id.* at 7, ¶ 33. Mr. Pogue did not respond to Mr. Son's request. *Id.*, ¶ 34. Mr. Son sent follow up emails on April 3, May 2, May 29, June 25, and July 29, 2024 requesting that Mr. Pogue provide additional information that Allstate should consider. *Id.*, ¶ 35.

On August 15, 2024, Mr. Pogue filed this case. Docket No. 4. Allstate removed the case to federal court on September 13, 2024. Docket No. 1. Mr. Pogue brings claims against Allstate for breach of contract, statutory bad faith, and common law bad faith, and a claim against Chubb titled "Claim for Benefits." Docket No. 19 at 54-57, ¶¶ 110-138. Among other relief, Mr. Pogue seeks damages of $84,344.91 for "lost time" spent attending medical appointments and recovering from medical procedures. Docket No. 58 at 3, ¶ 3. In his initial disclosures, Mr. Pogue characterizes the $84,344.91 as economic damages. *Id.*, ¶ 5. Mr. Pogue asserts that the lost personal time damages are properly measured as equal to the hourly value that is attached to Mr. Pogue's work

time. *Id.* at 4, ¶ 10. Using his partnership distributions, Mr. Pogue calculates his hourly rate to be $280.34 in 2019, rising to $478.75 by 2021. *Id.* The only record of earnings Mr. Pogue disclosed to defendants is a summary page from his 2021 Form 1040, which is almost entirely redacted (the “tax summary”).[9] *Id.* at 4, ¶ 9. The line item in the tax summary for “Salaries and wages” is redacted. *Id.* The tax summary shows that Mr. Pogue filed his taxes jointly with his wife and that they have jointly reported income under the “Partnership/S-corp income” line item. *Id.*, ¶ 12. Mr. Pogue has disclosed no evidence besides the tax summary to prove the hourly value of his work time. *Id.*, ¶ 11. Chubb’s insurance policy states that a failure to comply with the primary underlying insurance will result in a gap in coverage and that the insured must cooperate and comply with the terms and conditions of the primary underlying insurance. *Id.* at 6, ¶¶ 20-21.

On November 14, 2025, Allstate filed a motion for partial summary judgment, seeking summary judgment on Mr. Pogue’s statutory and common law bad faith claims and asserting that Mr. Pogue’s non-cooperation regarding his lost time damages bars Mr. Pogue from recovering such damages. Docket No. 54. On November 17, 2025,

[9] Mr. Pogue denies this fact, asserting that he provided further documentation of his tax return history to defendants. Docket No. 73 at 4, ¶ 9. In support, Mr. Pogue cites an email to Mr. Son. *Id.* (citing Docket No. 73-1). This email states that there are various records regarding Mr. Pogue’s claim for UIM benefits attached. Docket No. 73-1 at 1. However, Mr. Pogue’s citation does not include any documents that are attached, but only includes the email itself. *See generally id.* The email indicates what the attachments are, but does not indicate that any document related to Mr. Pogue’s taxes are attached to the email. *Id.* at 3-4. Therefore, the Court finds that Mr. Pogue’s citation does not refute Chubb’s assertion that Mr. Pogue only provided the tax summary in support of his earnings. Thus, the Court deems this fact admitted. Mr. Pogue denies other facts through citing the same exhibit, *see* Docket No. 73 at 5-7, ¶¶ 11-19, but the exhibit does not properly refute any of Chubb’s assertions of fact for the same reasons stated here.

Chubb filed a motion for partial summary judgment, seeking summary judgment on the issue of whether Mr. Pogue can recover for his claimed lost time damages. Docket No. 58.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

A movant who bears the burden at trial must submit evidence to establish the essential elements of its claim or affirmative defense. *Harper v. Mancos Sch. Dist. RE-6*, 837 F. Supp. 2d 1211, 1217 (D. Colo. 2011). By contrast, where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. Of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the

allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

## III. ANALYSIS

### A. Whether Rule 56 Motions are Premature

As an initial matter, Mr. Pogue argues that defendants' motions for summary judgment are premature because of a discovery dispute about a protective order regarding Allstate's claims manual. Docket No. 72 at 9-11. Rule 56(d) allows a court to deny or stay a summary judgment motion in order to permit further discovery if the nonmovant states by affidavit that she lacks facts necessary to oppose the motion. *Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000). To succeed on a Rule 56(d) motion, "the movant must submit an affidavit (1) identifying the probable facts that are unavailable, (2) stating why these facts cannot be presented without additional time, (3) identifying past steps to obtain evidence of these facts, and (4) stating how additional time would allow for rebuttal of the adversary's argument for summary judgment." *See Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1110 (10th Cir. 2017) (citation omitted). "Requests for further discovery should ordinarily be treated liberally." *Id.* (citing *Comm. for First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992)). "Summary judgment should be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition."

*Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986) (alterations omitted)).

Mr. Pogue's argument that the motions for summary judgment are premature fails for three reasons. First, Mr. Pogue has not submitted an affidavit in support of his claim. This alone is sufficient for the Court to find that Mr. Pogue has not shown the motions for summary judgment are premature. *See Cerveny*, 855 F.3d at 1110.

Next, Mr. Pogue argues that Allstate's claims manual is likely to provide evidence of industry standards and evidence of how Allstate has breached industry standards. Docket No. 72 at 10-11. The reasonableness of an insurer's conduct is determined based on proof of industry standards. *Schultz v. GEICO Cas. Co.,* 429 P.3d 844, 847 (Colo. 2018). Mr. Pogue's argument regarding the claims manual is unpersuasive. For one, Mr. Pogue does not state what industry standards he suspects Allstate violated and does not point to any underlying conduct Allstate committed that Mr. Pogue suspects will be confirmed as a breach of industry standards through review of Allstate's claims manual. Moreover, it is unlikely that industry standards can be established through Allstate's claims manual. Mr. Pogue argues that "[o]ne accepted surrogate for industry standards is an insurance company's claims manual." Docket No. 72 at 10. In support of this proposition, Mr. Pogue cites *Domokos v. Shelter Mut. Ins. Co.*, No. 18-cv-0903-WJM-NRN, 2020 WL 869854, at *11-12 (D. Colo. Feb. 21, 2020). *Id.* But in *Domokos*, 2020 WL 869854, at *11-12, the court noted that *Olson v. State Farm Mutual Auto. Ins. Co.*, 174 P.3d 849 (Colo. App. 2007), does not stand for the proposition that a claims manual can provide evidence of industry standards, but rather discusses

whether a claims manual can create an enforceable contract. Thus, Mr. Pogue fails to cite any authority to support his argument.

Finally, on December 19, 2025, Magistrate Judge Cyrus Y. Chung issued the protective order, Docket No. 79, but Mr. Pogue has not filed anything indicating that any new information was gleaned from the resolution of the discovery dispute. Accordingly, the Court finds that defendants' motions for summary judgment are not premature.

**B. <u>Bad Faith Claims</u>**

Allstate seeks summary judgment on Mr. Pogue's statutory and common law bad faith claims. Docket No. 54 at 9-14. Colo. Rev. Stat. § 10-3-1116(a) provides that policy holders who suffer an unreasonable delay or denial of benefits, as defined in Colo. Rev. Stat. § 10-3-1115, may bring an action for twice the covered benefits and attorneys' fees. *See* Colo. Rev. Stat. § 10-3-1116. Pursuant to § 10-3-1115, an insurer may not "unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." Colo. Rev. Stat. § 10-3-1115(1)(a). An insurer's conduct is unreasonable "if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." Colo. Rev. Stat. § 10-3-1115(2). The determination of whether an insurer has breached its duties to the insured is one of reasonableness under the circumstances. *Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 523 (Colo. App. 2008). In Colorado, acting "without a reasonable basis" has been construed to mean pursuing a groundless position that is not supported by credible evidence. *Cooper v. Shelter Gen. Ins. Co.*, 653 F. Supp. 3d 873, 878 (D. Colo. 2023) (quoting *Masters v. Safeco Ins. Co. of Am.*, No. 20-cv-00631-PAB-NRN, 2021 WL 4326269, at *5 (D. Colo. Sept. 23, 2021)). The question is whether a reasonable

insurer under similar circumstances would have denied or delayed payment of the claim. *Estate of Morris*, 192 P.3d at 523. The reasonableness of an insurer's conduct must be determined objectively, based on proof of industry standards. *Schultz*, 429 P.3d at 847. Whether an insurer's conduct was reasonable under the circumstances is ordinarily a question of fact for the jury. *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 497 (Colo. App. 2011). However, in appropriate circumstances, as when there are no genuine disputes of material facts, reasonableness may be decided as a matter of law. *Estate of Morris*, 192 P.3d at 524.

To prevail on a claim for bad faith delay or denial of insurance benefits under Colorado common law, a plaintiff must establish that her insurer (1) acted unreasonably under the circumstances; and (2) knew of, or had reckless disregard for, the unreasonableness of its actions. *Goodson v. Am. Standard Ins. Co. of Wisc.*, 89 P.3d 409, 415 (Colo. 2004). "The only element at issue in the statutory claim is whether an insurer denied benefits without a reasonable basis." *Cooper*, 653 F. Supp. 3d at 878 (alterations omitted) (quoting *Williams v. Owners Insurance Co.*, 621 F. App'x 914, 919 (10th Cir. 2015) (unpublished)). "By contrast, to prove a first-party claim of common law bad faith, a plaintiff must show not only that the insurer's conduct in processing or denying a valid claim was unreasonable but also that the insurer knew its conduct was unreasonable or recklessly disregarded the unreasonableness of its conduct." *Id.* (citing *Travelers Insurance Co. v. Savio*, 706 P.2d 1258, 1275–76 (Colo. 1985)). "Accordingly, a claim of common law bad faith imposes a more exacting standard of proof than a statutory claim." *Id.* (citation omitted)); *Kisselman v. Am. Family Mut. Ins. Co.*, 292 P.3d 964, 975 (Colo. App. 2011) (the "burden of proving th[e] statutory claim is less onerous

than that required to prove a claim under the common law for breach of the duty of good faith and fair dealing").

Allstate argues that Mr. Pogue lacks any evidence indicating that Allstate unreasonably delayed or denied payment of a benefit covered under the insurance policy. Docket No. 54 at 9-13. In response, Mr. Pogue asserts that there was unreasonable delay and denial regarding Mr. Pogue's claim for lost time for traveling to and from medical appointments.[10] Docket No. 72 at 11-12. Specifically, Mr. Pogue argues that the tax summary he provided is sufficient for Allstate to determine Mr. Pogue's earnings and, even if Allstate could not determine Mr. Pogue's earnings, *Nemer v. Anderson*, 378 P.2d 841, 844 (Colo. 1963), establishes that Mr. Pogue is entitled to compensation for his lost time separate from his earning capacity. *Id.*

As to Mr. Pogue's first argument, the Court finds that the tax summary is insufficient for Allstate to determine Mr. Pogue's earning capacity. It is undisputed that the tax summary is mostly redacted, including the line item showing salaries and wages. Docket No. 58 at 4, ¶ 9; *see also* Docket No. 58-4. It is also undisputed that, while the tax summary indicates partnership and S-corp income, the tax summary consists of Mr. Pogue's joint filings with his wife and does not differentiate between his partnership and S-corp income and his wife's partnership and S-corp income. Docket No. 58 at 4, ¶ 12. The tax summary does not indicate whether Mr. Pogue's wife earned partnership and S-corp income, what portion of the reported partnership and S-corp income Mr. Pogue received as compensation from Edward Jones, what non-partnership distributions Mr.

[10] Mr. Pogue does not argue that Allstate acted in bad faith by unreasonably delaying or denying any other portion of his claim, such as the claim that his shoulder and toe surgery were related to the automobile accident. *See generally* Docket No. 72.

Pogue earned from Edward Jones, and whether Mr. Pogue earned a salary from Edward Jones. The Court finds that the heavily redacted tax summary showing only that Mr. Pogue and his wife jointly reported partnership and S-corp income did not enable Allstate to determine Mr. Pogue's pre-incident and post-incident earnings and the manner in which he was paid. Accordingly, the Court finds that Allstate did not act in bad faith by requesting that Mr. Pogue provide additional documentation in order for Allstate to determine how Mr. Pogue was compensated by Edward Jones.

The Court is also unpersuaded by Mr. Pogue's second argument. Mr. Pogue argues that Allstate acted unreasonably in attempting to evaluate his claim for lost time. Docket No. 72 at 12. Mr. Pogue asserts that his lost time damages are properly measured by dividing his annual partnership income by 2,080 (40 hours per week times 52 weeks), yielding his hourly rate, and then multiplying that number by the hours spent attending medical appointments. Docket No. 58 at 4, ¶ 10; Docket No. 54-14 at 3. However, this method assumes that Mr. Pogue is paid on an hourly basis, for which he provides no proof, and that he did not make up the hours spent at medical appointments at other times during the day, meaning that he lost income. Mr. Pogue provides no evidence of not making up this lost time. The Court finds that it was reasonable for Allstate to ask Mr. Pogue for the information it did in order to assess Mr. Pogue's lost time claim.

Mr. Pogue argues that *Nemer*, 378 P.2d 841, stands for the proposition that an insured has a right to compensation for loss of time separate and distinct from a claim for loss of earning capacity. Docket No. 72 at 12. Mr. Pogue claims that Allstate's "fixation on precisely determining earnings continues the unreasonable policies and

practices that *Nemer* clearly describes as illegal." *Id.* But *Nemer* does not establish that every insured has a right to recover for lost time. Rather, in *Nemer*, the Colorado Supreme Court reviewed a trial court's determination that a plaintiff's estate was owed $2,970.00 for time that the plaintiff was unable to work in a family business while recovering from her covered injuries. *Id.* The defendant challenged this finding because the plaintiff was paid no salary for the bookkeeping work she performed. *Id.* The Colorado Supreme Court affirmed the trial court's damages determination, noting that the family business had to hire a replacement to do the plaintiff's work while she was incapacitated, and the plaintiff's estate was entitled to recover the salary of the replacement bookkeeper. *Id.* Contrary to Mr. Pogue's assertion, the Colorado Supreme Court evaluated the claim for lost time based on the replacement cost of the plaintiff's work. Moreover, *Nemer* is not an insurance case and there is no language supporting the proposition that there is an absolute right for insureds to recover for lost time damages. Accordingly, the Court finds that Allstate did not act contrary to *Nemer* by attempting to learn additional information about how Mr. Pogue is compensated by his workplace.

The Court finds that no reasonable jury could find that Allstate unreasonably delayed or denied payment of a claim. Thus, the Court will grant summary judgment on the statutory bad faith claim. Moreover, because the first element of a common law bad faith claim requires a showing that the insurer acted unreasonably, the Court will also grant summary judgment on the common law bad faith claim.

### C. <u>Non-Cooperation</u>

Finally, Allstate argues that Mr. Pogue is barred from recovering for his lost time claim because of his non-cooperation with Allstate's attempt to evaluate that claim.

Docket No. 54 at 14-18. Chubb joins that argument, noting that its policy states that failure to comply with the primary underlying insurance will result in a gap in coverage. Docket No. 58 at 15.

"Under Colorado law an insured may forfeit the right to recover under an insurance policy if he or she fails to cooperate in violation of a policy provision." *Walker v. State Farm Fire & Cas. Co.*, No. 16-cv-00118-PAB-STV, 2017 WL 1386341, at *3 (D. Colo. Feb. 23, 2017), *report and recommendation adopted*, 2017 WL 1386346 (D. Colo. Mar. 17, 2017). "When an insurer asserts a noncooperation defense, the insured will likely be held to have forfeited his or her right to recover under an insurance policy when, in violation of a policy provision, the insured fails to cooperate with the insurer in some material and substantial respect and this failure to cooperate materially and substantially disadvantaged the insurer." *Soicher v. State Farm Mut. Auto. Ins. Co.*, 351 P.3d 559, 564 (Colo. App. 2015) (citing *State Farm Mut. Auto. Ins. Co. v. Secrist*, 33 P.3d 1272, 1275 (Colo. App. 2001)). The insurer bears the burden to prove failure to cooperate. *Id.* "Material and substantial disadvantage" is determined by

> whether the insurer has been able to complete a reasonable investigation with regard to whether the insured's claim is valid. If the insured's refusal to cooperate prevents the insurer from completing such a reasonable investigation, prejudice should be found to exist. Specifically, it has been held that the insurer can deny coverage, following an insured's refusal to provide documents reasonably requested by the insurer, on the basis that the insurer has been prejudiced because the insured's refusal prejudices the insurer by putting the insurer in the untenable position of either denying coverage or paying the claim without the means to investigate its validity.

*Walker*, 2017 WL 1386341, at *4 (quoting 1 Allan D. Windt, *Insurance Claims & Disputes* § 3.2 (6th ed. 2016)).

Colo. Rev. Stat. § 10-3-1118 "requires an insurer to satisfy specific requirements before asserting an insured's failure to cooperate as a defense to a claim for benefits in 'litigation that occurs on or after' September 13, 2020." *Dale v. State Farm Mut. Auto. Ins. Co.*, 699 F. Supp. 3d 1219, 1223 (D. Colo. 2023). These requirements include submitting a written request for information which is not available by other means, giving the insured 60 days to respond, and giving the insured an opportunity to cure the alleged failure to cooperate. Colo. Rev. Stat. § 10-3-1118(1)(a)-(e).

The Court finds that Allstate adhered to the requirements of § 10-3-1118. It is undisputed that Mr. Son, on behalf of Allstate, sent Mr. Pogue a letter on September 20, 2022 explaining that he had previously requested documentation regarding lost earnings but had not yet received such documentation. Docket No. 54 at 4, ¶ 16. On November 2, 2022, Mr. Pogue responded in a letter where he attempted to explain how his per-hour rate was calculated, but denied Mr. Son's request for documentation related to Mr. Pogue's compensation. *Id.*, ¶ 17. On November 10, 2022, Mr. Son explained why he needed the documentation to calculate the lost time damages, requested Mr. Pogue's cooperation, and advised Mr. Pogue that the information should be produced within 60 days. *Id.*, ¶ 18. Mr. Pogue responded on January 10, 2023, rejecting Mr. Son's request for additional information and asserting that Mr. Pogue had all the information necessary to calculate lost time damages. *Id.* at 5, ¶ 19. Mr. Son responded on January 23, 2023, reiterating that he needed documentation to confirm Mr. Pogue's claims regarding earning capacity and providing Mr. Pogue an additional 60 days to cooperate with the requests for information. *Id.*, ¶¶ 20-21. Mr. Pogue failed to respond to the letter and, on June 7, 2023, Mr. Son sent another letter detailing his

request for information and explaining how the failure to cooperate was prejudicing Allstate's evaluation of the lost time claim. *Id.*, ¶¶ 22-23. Mr. Son sent five additional follow-up emails requesting additional information. *Id.* at 7, ¶ 35. Thus, Allstate went above and beyond the requirements of § 10-3-1118, giving Mr. Pogue multiple chances and more than 60 days to cure his non-cooperation.

The Court finds that Mr. Pogue's noncooperation materially and substantially disadvantaged Allstate. Mr. Pogue premised his claim for lost time based on the hourly value of his work time. Docket No. 58 at 4, ¶ 10. As the Court found above, Mr. Pogue's tax summary was inadequate for Allstate to determine the hourly value of Mr. Pogue's compensation. Therefore, without additional information, Allstate had no choice but to either deny coverage or to accept Mr. Pogue's assertion about the value of his lost time without validating the assertion. Thus, the Court finds that Mr. Pogue's recovery for lost time is barred by his failure to cooperate with Allstate's requests for information.[11]

Finally, Mr. Pogue argues that he should be given the opportunity to cure any non-cooperation the Court finds. Docket No. 72 at 16. However, as contemplated by § 10-3-1118, Allstate has already given Mr. Pogue several opportunities to cure his non-cooperation. Mr. Pogue has failed to do so, and the Court finds no reason to give him another opportunity to do so now, almost seven years after the underlying automobile

[11] Mr. Pogue asserts that Allstate failed to answer various inquiries from Mr. Pogue regarding what documentation Allstate needs to adjudicate his lost time claim. Docket No. 72 at 15. However, Mr. Pogue provides no undisputed facts regarding these alleged inquiries and cites no evidence in support of this claim. *See id.* The Court will not consider these unsubstantiated allegations. *See Phillips v. Calhoun*, 956 F.2d 949, 950 n.3 (10th Cir. 1992) ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings.") (citations omitted).

accident occurred. Therefore, the Court will grant Allstate's partial motion for summary judgment. Moreover, because Chubb seeks to bar Mr. Pogue's recovery on his lost time claim and because Chubb's insurance policy states that the insured must cooperate with his underlying insurance, the Court will grant Chubb's motion for partial summary judgment.

## IV. CONCLUSION

Therefore, it is

**ORDERED** that Defendant Allstate's Motion for Summary Judgment [Docket No. 54] is **GRANTED**. It is further

**ORDERED** that Defendant Chubb's Motion for Summary Judgment in Part [Docket No. 58] is **GRANTED**. It is further

**ORDERED** that Mr. Pogue's first claim for relief is **DISMISSED with prejudice**. It is further

**ORDERED** that Mr. Pogue's third claim for relief is **DISMISSED with prejudice**. It is further

**ORDERED** that Mr. Pogue is barred from recovering damages based on his claim for lost time.

DATED September 15, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge